IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

-----------

No. 93-3277
No. 93-3284

-----------

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                        versus

RICHARD DAVIS, SR.,

                                        Defendant-Appellant.

*************************************************************

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                        versus

JIM LEWIS and JOEY GRAY,

                                        Defendants-Appellants.

-----------

Appeal from the United States District Court
for the Eastern District of Louisiana

-----------

(April 5, 1994)

Before HIGGINBOTHAM and WIENER, Circuit Judges, and KAUFMAN,[*]
District Judge.

HIGGINBOTHAM, Circuit Judge:

     A grand jury indicted Richard Davis, Sr., Jim Lewis, Joey
Gray, Mark Facey, and Tom Coulton for conspiracy to kidnap William
H. Speiss, Jr. in violation of 18 U.S.C. § 1201(c).  The grand jury
also charged Davis, Lewis, and Gray for kidnapping in violation of

------------

     [*]District Judge of the District of Maryland, sitting by
designation.

18 U.S.C. § 1201(a)(1) and (2). Davis pleaded guilty. A jury found Lewis and Gray guilty on both counts but acquitted Facey and Coulton. The district court sentenced Davis and Lewis to 78 months and Gray to 70 months imprisonment. Davis, Lewis, and Gray appealed. Much of this appeal revolves around defendants' claimed defense that a kidnap victim must be alive and the victim here was dead, or so they thought. We affirm.

I.

This exotic story has its genesis appropriately in a dispute over business dealings in the Bird Cage, a wholesale exotic bird supplier located in Louisiana. On July 13, 1992, Davis, the owner of the Bird Cage, accused Speiss and other employees of stealing merchandise. The accusations turned violent when Davis started to hurl obscenities and brandish a gun. Soon, Lewis and Gray, employees of the Bird Cage, joined the melee. Speiss started to leave the Bird Cage, but Davis and Gray bound him, took his car keys, interrogated him, and poked him with a sizeable wooden stick. Finally, they placed him in a trailer.

After about an hour, Davis and Gray returned with the wooden stick. Gray cursed Speiss and beat him with the stick. When Speiss began to scream, Gray stuffed a gag in his mouth. After Davis had poked Speiss a few times with the stick, Davis and Gray dragged Speiss to his car and heaved him into the trunk. Davis demanded a confession from Speiss about the theft of store property. He answered Speiss' denial of wrongdoing by slamming the trunk closed.

After Davis opened the trunk, he stuffed another gag in Speiss' mouth and threatened to kill him. Next, Davis and Gray drove the car out of the Bird Cage parking lot with Speiss in the trunk, battered and bleeding. As they were leaving, Lewis replaced Gray in the car. With Davis driving, Lewis in the passenger seat, and Speiss in the trunk, the three drove to Mississippi. At one point, Davis told Lewis that he thought Speiss was dead.

After Davis, Lewis, and Speiss reached Mississippi, Gray, who had been following in a car taken from Harry Matthews, another Bird Cage employee, drove away and dumped Matthews' car in a pond in Natchez, Mississippi. He called relatives to come pick him up. Davis and Lewis checked into a Natchez hotel under Davis' assumed name. Lewis made several phone calls. Speiss remained in the trunk. Early the next morning, Coulton and Facey arrived at the hotel and discussed what to do with Speiss.

In the early morning hours of July 14, 1992, Davis and Lewis drove from the hotel with Speiss still in the trunk. Coulton and Facey followed in another car. They drove for a couple of hours before they found a rural field in which they planned to dump Speiss' body. Seeing that Speiss was still alive, Davis and Lewis pulled him out of the trunk as he pleaded for his life. Davis told Speiss to lie down in the back seat of the car. The party drove south toward New Orleans. Eventually, Davis and Lewis took Speiss to an apartment in Mandeville, Louisiana.

At the apartment, Speiss called his wife and son. Davis, Lewis, and Coulton began cleaning Speiss' wounds. Eventually,

Coulton and Neil Ledett, another Bird Cage employee, allowed Speiss to escape. They assisted Speiss into his car and arranged a meeting with his wife. The next day, Speiss contacted the authorities. Given the foul nature of the crime, the jury convicted and the district court decided that the sentence should not be paltry. Davis, Lewis, and Gray appealed.

## II.

Gray claims that the district court erred by refusing to charge the jury that the defendants could not have conspired to kidnap and could not have actually kidnapped the victim because they thought he had died after the beating. Lewis had proposed the following instruction:

> You are hereby instructed that in order to establish a violation of the Federal Kidnapping Act it is necessary that the person being transported be alive because the transportation of a dead body does not violate the Federal Kidnapping Act. Because the defendant believed that the victim was dead there could not be a conspiracy to kidnap the victim or an actual kidnapping. Therefore, if you find that the defendant believed that the victim was dead there could not be a violation of the Federal Kidnapping Act. Thus, defendant could not be guilty of a violation of the Act.

Davis had told Lewis that he thought Speiss was dead. The fact that the defendants had left Speiss in the trunk overnight and had searched for a place to dump his body also suggests that they thought the trunk contained a corpse rather than a live person. The court did not mention the dead victim issue to the jury. No party objected to the jury charge.

When no party objects at trial to a jury instruction, we will uphold the charge absent plain error. United States v. Franklin,

4

586 F.2d 560, 569 (5th Cir. 1978), cert. denied, 440 U.S. 972 (1979).  Plain error occurs only when the instruction, considered as a whole, was so clearly erroneous as to result in the likelihood of a grave miscarriage of justice.  United States v. Varkonyi, 645 F.2d 453, 460 (5th Cir. 1981).  In this case, the jury charge offered a correct statement of the law.

Lewis' proposed instruction was not accurate because a defendant's mistaken belief that the victim is dead is not a defense to the kidnapping offense.  The federal kidnapping statute provides:

> Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts or carries away and holds for ransom or reward otherwise any person, except in the case of a minor by a parent thereof, when:
> (1) the person is willfully transported in interstate or foreign commerce;
> . . . .
> shall be punished by imprisonment for any term of years or life.

18 U.S.C. § 1201(a).  Under this provision, the government must establish four elements: (1) the transportation in interstate commerce (2) of an unconsenting person who is (3) held for ransom, reward or otherwise, (4) such acts being done knowingly and willfully.  United States v. Jackson, 978 F.2d 903, 910 (5th Cir. 1992), cert. denied, 113 S.Ct. 2429 (1993).

It is true that under § 1201(a) the defendants must abduct a live person who then moves in interstate commerce.  Federal kidnapping does not cover transportation of a corpse across state lines.  From this fact, however, it does not follow that a defendant who thinks he has a dead person but who in fact has a

5

live victim does not violate the federal kidnapping provision.  If the defendant has abducted an unconsenting live body that then moves in interstate commerce, he has violated the federal kidnapping law, even if he believed the person was dead.

To be sure, Jackson suggests that a federal kidnapper has to knowingly and willfully abduct an unconsenting person, which could only mean a live person, but the statute does not require that the kidnapper know that his victim is alive.  Instead, it requires only that he overcome the will of a victim who then moves in interstate commerce.  Jackson did not confront the issue of whether a federal kidnapper must believe his victim is alive, but the question is answered by the express language of the federal kidnapping statute.

                              III.

Gray also alleges that the evidence is insufficient to sustain his conviction.  We review the evidence, whether direct or circumstantial, and all reasonable inferences drawn from the evidence in the light most favorable to the jury's verdict.  United States v. Pigrum, 922 F.2d 249, 253 (5th Cir.), cert. denied, 111 S.Ct. 2064 (1991).  We determine whether a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt.  United States v. Carter, 953 F.2d 1449, 1454 (5th Cir.), cert. denied, 112 S.Ct. 2980 (1992).

Unfortunately for Gray, he waived his objection first made at the close of the government's evidence when he did not renew it at

6

the end of the trial.  United States v. Daniel, 957 F.2d 162, 164 (5th Cir. 1992).  Under these circumstances, we affirm the conviction unless to do so would work a miscarriage of justice. Id.  Because the evidence was sufficient for the jury to find Gray guilty of kidnapping conspiracy and kidnapping, sustaining this conviction entails no miscarriage of justice.

Gray points to what he sees as a lack of proof that he ever agreed to transport Speiss anywhere.  Interstate transportation of the victim is a jurisdictional question and not an element of the crime.  Jackson, 978 F.2d at 910.  The government proved beyond a reasonable doubt that Speiss was transported in interstate commerce.  As well, ample evidence shows that Gray agreed to hold, detain, and transport Speiss against his will.  See id.  The government did not have to prove that Gray agreed to move Speiss in interstate commerce to prove federal kidnapping.

Next, Gray suggests that there was no testimony that the parties entered into a conspiratorial agreement.  The government need not prove that the alleged conspirators entered into a formal agreement; the agreement could have been silent or tacit.  United States v. Martin, 790 F.2d 1215, 1219-20 (5th Cir.), cert. denied, 479 U.S. 868 (1986).  The government must prove the existence of an agreement and the defendant's knowledge of the conspiracy and his voluntary participation.  It has met this burden.

Gray faults the district court for not instructing the jury on the Pinkerton theory of liability, which imputes a conspirator's

7

substantive offenses to his coconspirators. <u>Pinkerton v. United States</u>, 328 U.S. 640, 645-48 (1946). Gray cannot demonstrate prejudice from a failure to instruct on the <u>Pinkerton</u> doctrine because the omission, if anything, deprived the jury of a legitimate theory of conviction. <u>See</u> <u>id.</u>

## IV.

Lewis challenges the admission of Matthews' testimony about the early stages of the conspiracy. Matthews stated that Davis had ordered Lewis to accompany him to retrieve some money. After the two had left in Matthews' car, Matthews recounted, Lewis, who had a gun in his lap, called Davis. Matthews said that, soon thereafter, Lewis ordered him from the car and drove away. Although the district court excluded the testimony, Matthews also stated that Lewis wanted him to act as if he had been beaten and that Lewis had to return to the Bird Cage to help with Speiss. The government argued that Matthews' testimony showed when the conspiracy began and how the conspirators came to possess Matthews' car without Matthews.

Prior to Matthews' testimony, the government explained the intended purpose of Matthews' story, but Lewis objected on the basis that the testimony was inadmissible character evidence. <u>See</u> Fed. R. Evid. 404(b). The district court ruled:

> Well, I would think that any conversation that the defendant Lewis had that would place him within the conspiracy prior to the time of his arrival at the scene is admissible and is relevant. You have to be very careful with the area in which you are dealing. If there are objections, specific objections, that you want to make, make them, and I'll rule on them. We'll see what happens.

8

We review such evidentiary rulings under the abuse of discretion doctrine. Jon-T Chem., Inc. v. Freeport Chem. Co., 704 F.2d 1412, 1417 (5th Cir. 1983).

On appeal, Lewis again argues that Matthews' story was inadmissible character evidence under Rule 404(b). This contention fails to appreciate that the district court did not admit Matthews' testimony pursuant to Rule 404(b), which would trigger the test in United States v. Beechum, 582 F.2d 898 (5th Cir. 1978) (en banc), cert. denied, 440 U.S. 920 (1979), for determining the admissibility of extrinsic evidence, but instead admitted the testimony as intrinsic evidence of the conspiracy. Far from being Rule 404(b) evidence, Matthews' story and the inferences drawn from it establish both when the charged conspiracy began and when Lewis knowingly and willfully join it.

V.

The district court enhanced the sentences of Davis and Lewis by two levels because they inflicted serious bodily injury upon Speiss. U.S.S.G. § 2A4.1(b)(2)(B). Serious bodily injury involves extreme physical pain or the impairment of a function of a bodily member, organ or mental faculty; it might require medical intervention such as surgery, hospitalization, or physical rehabilitation. U.S.S.G. § 1B1.1, application note 1(j). The PSR had recommended such an enhancement due to numerous lacerations and other injuries Speiss sustained during his ordeal.

Davis argues that Speiss suffered bodily injuries, but he maintains that they did not rise to the level of serious bodily

harm.  The seriousness of Speiss' injuries is a fact inquiry reviewable only for clear error.  United States v. Moore, 997 F.2d 30, 37 (5th Cir. 1993), cert. denied, 114 S.Ct. 647 (1993).  The district court found that Speiss' ailments met the definition. Davis himself had recognized on the road to Mississippi that Speiss seemed more dead than alive.  The district court did not commit clear error.

Lewis also attacks his enhancement for the infliction of serious bodily injury, though he does so on different grounds. Lewis admits that Speiss suffered serious bodily injuries, but he contends that he did not participate in inflicting these injuries and that he could not have foreseen such a vicious attack.  Lewis, however, had plotted with Davis at the beginning of the conspiracy and had travelled to Mississippi knowing that Speiss, certainly injured and possibly dead, needed medical attention more than a long ride in the trunk.  Lewis is accountable for serious bodily injuries because he reasonably could have foreseen them.  See U.S.S.G § 1B1.3(a)(1)(B).

VI.

A sentencing court must increase the base offense level by two points if it finds that a dangerous weapon was used.  U.S.S.G. § 2A4.1(b)(3).  The phrase "a dangerous weapon was used" means that a firearm was discharged or a firearm or "dangerous weapon" was "otherwise used."  U.S.S.G. § 2A4.1(b)(3), application note 2.  A "dangerous weapon" is an instrument capable of inflicting death or serious bodily injury.  U.S.S.G. § 1B1.1, application note 1(d).

10

The phrase "otherwise used" means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon. U.S.S.G. § 1B1.1, application note 1(g). The district court enhanced the sentences of Davis and Lewis because the wooden stick and the gun constituted dangerous weapons in the hands of the conspirators.

The district court did not clearly err in determining that the wooden stick and gun were dangerous weapons. The wooden stick served as a dangerous weapon because of its characteristics (a rather large stick of manzanita wood, a hard wood used to make bird cages) and the manner in which it was used by Gray (to beat Speiss on his head, arms, and legs). Although Davis and Lewis did not inflict major injuries with either the stick or the gun (Davis only poked Speiss with the stick and Lewis spared the rod altogether), they could have reasonably foreseen the way in which Gray used the stick. As well, Davis and Lewis used the stick and the gun respectively in ways that intimidated Speiss. These facts justify the enhancement.

## VII.

Davis and Lewis challenge the findings of their respective roles in the crime made in the sentencing proceeding. Davis maintains that he should not have received the four level enhancement under U.S.S.G. § 3B1.1(a) for exhibiting leadership of or control over all of the five participants. The enhancement in § 3B1.1(a) requires that the enterprise involve five or more people

11

criminally responsible for the offense, but not necessarily convicted for the crime. U.S.S.G. § 3B1.1, application note 1. The district court found that Davis had led and controlled Gray, Lewis, Facey, Coulton, and himself. We review the district court's determination on this front under the clearly erroneous standard. United States v. Mejia-Orosco, 867 F.2d 216, 221 (5th Cir.), cert. denied, 492 U.S. 924 (1989).

Davis does not dispute that he led Gray, Lewis, and himself, but he does claim that he did not lead Facey and Coulton. The district court could have enhanced Davis' sentence based on his leadership of Facey and Coulton despite their acquittals. As well, Facey and Coulton played a meaningful role in the criminal enterprise. The record confirms the PRS's (and the district court's) assessment that Davis "direct[ed] the actions of [Coulton and Facey]." Coulton was present when the hapless Speiss was beaten and stuffed in the trunk. Once in the Mississippi hotel, Davis told Lewis to summon help. Lewis called Coulton and Facey who drove to the hotel and accompanied Davis and Lewis to the field to dispose of the victim. The government proved the presence of five criminally responsible participants.

Lewis challenges the court's determination that he did not play a minor role in the offense. He contends that he should have received a two level reduction in his sentence for his minor role. See U.S.S.G. § 3B1.2. Again, the role of a defendant in the offense is a sophisticated factual determination we leave to the district court under the protection of the clearly erroneous

12

standard. <u>Mejia-Orosco</u>, 867 F.2d at 221. The fact that Lewis rode to Mississippi in the car that contained Speiss in its trunk, participated in conversations with Davis concerning the disposal of Speiss' body, and stood ready to dispose of the body suggests that Lewis was not less culpable than most other participants. <u>See</u> U.S.S.G. § 3B1.2, application notes 1 and 3.

AFFIRMED.