IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

Nos. 94-20617 & 96-20619
_____


UNITED STATES OF AMERICA,

                    Plaintiff-Appellee,

v.

KELLY LYN BOOTHE,

                    Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
(CR-H-93-257-4)
_____
October 24, 1996
Before KING, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:[*]

     Kelly Lyn Boothe and his codefendants James Aaron Martin and
Ambrose Onye Esogbue appealed their convictions for conspiracy,
wire fraud, and money laundering.  We remanded Boothe's appeal
because the district court had not ruled on his motion for new
trial.  The district court subsequently denied the motion, and
now Boothe's appeal is properly before this court.  As the facts
are set out in our first opinion, we will not repeat them here.

_____

[*]Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

Boothe argues on appeal that the trial court erred in denying his motions for continuance and for a new trial and erred in its application of the United States Sentencing Guidelines. Boothe also argues that the trial court erred in refusing to allow the impeachment of a witness, Steven Overstreet, and in its questioning of a witness from the bench. However, Boothe's codefendants asserted these later points, and we adopt here our prior disposition for the government.[1]

## Motion for Continuance

Boothe contends that the trial court erred in denying his requests for continuance. The granting or denial of a motion for continuance is entrusted to the trial judge's sound discretion and will not be reversed absent abuse of discretion. *United States v. Jackson*, 978 F.2d 903, 911 (5th Cir. 1992), *cert. denied*, 508 U.S. 945, *and cert. denied*, 509 U.S. 930 (1993); *United States v. Shaw*, 920 F.2d 1225, 1230 (5th Cir.), *cert. denied*, 500 U.S. 926 (1991). "[T]he question is whether the district court abused its discretion by unreasonably and arbitrarily insisting on an expeditious trial." *Jackson*, 978 F.2d at 912; *accord Morris v. Slappy*, 461 U.S. 1, 12 (1983).

---

[1] In support of his contention that the trial court erred in questioning a witness, Boothe points to one additional question not mentioned by the other codefendants. However, it is similar in nature to the other questions and does not affect the analysis made in our previous decision.

Furthermore, Boothe must show that he was "materially prejudiced by the lack of preparation time." *Jackson*, 978 F.2d at 912.

Harry Loftus was Boothe's attorney at least from Boothe's arraignment on February 10, 1994. The trial date was set for March 15. On March 1, Loftus filed a motion for continuance for seventy-five days, asserting that he had not had a chance to proceed with discovery and that this was a complex case with a "voluminous amount" of materials. At the pretrial conference on March 8, Loftus argued in support of his continuance motion, contending that because of the volume of paperwork he would not be prepared for trial for at least thirty days. The government opposed the motion, even though the prosecutor conceded "that there is a large volume of paper in this case and rather complex transactions underlying the case." The court granted the motion in part by granting a one week continuance and resetting the trial for March 22.

On March 22, Loftus made a proffer of comments which Boothe wished to have before the court:

> MR. LOFTUS: Our position is that based upon the amount of time that Mr. Boothe and I have been given to prepare the case and the fact that I was ill at the time when we first started out, I didn't inform Mr. Booth of that. I just finished up the chemotherapy that I've been taking since back before the first of February. We have been working diligently and there just aren't enough hours in the day for us to get prepared in such a short period of time, and that I'm a solo practitioner. And Mr. Boothe is, I think, very afraid that he's not going to get a fair shake through my representation.

3

The government made no response at that time.

The trial was delayed because of court business.  On March 31, Boothe made another motion for continuance in order to obtain new counsel.  Boothe had expressed his belief that Loftus could not adequately represent him due to Loftus's illness.  The court questioned Loftus as follows:

> THE COURT:  Mr. Loftus, do you feel you are physically unable to try a case?
>
> MR. LOFTUS:  No, Your Honor.
>
> THE COURT:  You're okay to that extent?
>
> MR. LOFTUS:  I have a clean bill of health from my doctor.
>
> THE COURT:  All right. . . .
>
> . . . .
>
> THE COURT:  Let me ask you this, Mr. Loftus, do you think you're capable of proceeding and doing a workmanlike job as an officer of the Court to defend this case [given that it] won't even be going early next week, it would probably be mid next week based upon the case I now have in trial?
>
> MR. LOFTUS:  Yes, Your Honor, I'm ready.  But if my client doesn't have any more confidence in me than to send me a letter and request this, then he would not feel secure and it would just pile up on me.

The trial judge then questioned Loftus on his availability to communicate with Boothe regarding the trial, and Loftus indicated that they had been very diligent in conferring.  The trial court also noted that Loftus "has been around a long time as a member of the bar of this court."

The trial court then decided to let the prosecutor ask Boothe questions as a vehicle for Boothe to voice his concerns about Loftus's ability to represent him:

MS. HARMON:  Mr. Boothe, do you have a conflict with your counsel so serious to create a total lack of communication with him such that he would not be able to present an adequate defense?

MR. BOOTHE:  My counsel and myself get along very well and I respect him.  However, I do have some concerns with his health.  I had an uncle that suffered from cancer—

THE COURT:  I can't hear you.

MR. BOOTHE:  My counsel and myself have no personality conflicts.  I have concern about his health and his ability to undergo perhaps a lengthy trial with a lot of information.  I had an uncle who suffered from cancer and who was treated with chemotherapy.  I recall very vividly how that would affect his memory at times and he would get exhausted.  My position is that I just—I'm 28.  The rest of my life is before me one way or the other here in this courtroom.

MS. HARMON:  I understand, sir, and you did say that in your letter.  The answer to the first question is, no, you do not have a lack of communication to prevent him from presenting an adequate defense?  That would be no?

MR. BOOTHE:  No personality conflict.

MS. HARMON:  Or lack of communication?

MR. BOOTHE:  No, we communicate well.

MS. HARMON:  All right.  Then my second and last question would be, is it your belief that Mr. Loftus is currently experiencing problems, health problems or emotional problems or mental problems so severe as to call into doubt his ability to render competent assistance at trial, or is this something you're afraid of or foresee during the trial?

MS. BOOTHE:  I don't know the exact extent of Mr. Loftus' health.  However, my position is, once I'm in

5

this thing and I'm found guilty or not guilty, it's a little late for me to say, well, then perhaps his physical state was a little worse than I presumed. I just don't feel like I can afford to take that chance. If this were a civil proceeding, that would be different.

MS. HARMON: So your concern is what might happen in the future; is that correct, sir?

MR. BOOTHE: Beginning with the trial.

The trial court then denied Boothe's motion.

It is apparent from the record that the trial court gave due consideration to the issue. We cannot say that the trial court acted unreasonably and arbitrarily. Boothe admitted that his concerns were speculative and that he did not specifically know of a current health problem that would impair Loftus's abilities. In the March 31 hearing regarding Boothe's motion, Loftus clearly and unequivocally indicated that he was ready to proceed to trial. "In the face of an unequivocal and uncontradicted statement by a responsible officer of the court that he was fully prepared and 'ready' for trial, it was far from an abuse of discretion to deny a continuance." *Slappy*, 461 U.S. at 12. Especially given Loftus's long-time experience as a trial attorney, the trial court was entitled to rely on Loftus's judgment that he was ready for trial.

Boothe argues that given Loftus's prior statements that he needed more time, the trial court should have "appreciated the need to accommodate the appellant." After working on the case

6

for several days, and considering that the trial would not start for several more days, Loftus was certainly entitled to change his prior assessment that he was not ready for trial. In effect, Boothe is asking us to second guess the trial court's refusal to second guess Loftus's unequivocal statement as an officer of the court that he was ready for trial. That goes too far. The trial judge did not act unreasonably and arbitrarily in denying Boothe's motion for continuance, and thus we find no abuse of discretion.

## Motion for New Trial

Boothe moved for a new trial on the basis that he was denied effective assistance of counsel. In support of this motion, Boothe submitted an affidavit indicating that when he found out about Loftus's cancer he "lost confidence in him," that he felt that Loftus was unprepared at trial, and that he did not testify because he lost confidence in Loftus. The government apparently filed no response, and the trial court denied the motion after we previously remanded Boothe's appeal.

We review the trial court's ruling on a motion for new trial for abuse of discretion. *United States v. Logan*, 861 F.2d 859, 865 (5th Cir. 1988). *Logan* held that the standard for evaluating a motion for new trial based on ineffective assistance of counsel is the basic test for ineffective assistance of counsel set forth

7

in *Strickland v. Washington*, 466 U.S. 668 (1984).[2]  The

*Strickland* test requires, <u>inter</u> <u>alia</u>, that the defendant show

that "'the decision reached would reasonably likely have been

different absent the errors.'"  *Logan*, 861 F.2d at 864 (quoting

*Strickland*).  Boothe's motion for new trial is supported only by

a cursory affidavit, and Boothe never even asserts that absent

his attorney's alleged deficiences, the result of his trial would

likely have been different.  Thus, the district court did not

abuse its discretion in refusing to grant Boothe's motion for new

trial.

### Sentencing

Boothe challenges his sentence for money laundering (counts

nine and ten), claiming that the sentencing court should have

determined his base offense level in reference to United States

Sentencing Guidelines ("USSG") § 2F1.1, the fraud guideline,

rather than § 2S1.1, the money laundering guideline, because his

conduct was atypical of money laundering in that it was simply

---

[2]  Boothe argues that the rule in *Logan* should not apply in this case for two reasons.  First, he quarrels with the wisdom of *Logan*.  However, a panel of this court may not overrule the decision of a prior panel in the absence of an en banc reconsideration or a superseding decision of the Supreme Court. *Floors Unlimited, Inc. v. Fieldcrest Cannon, Inc.*, 55 F.3d 181, 185 (5th Cir. 1995).  Second, he argues that his ineffective assistance claim is not typical, and that his "unusual circumstances" merit a different rule.  Boothe cites no authority for this proposition, and we are not persuaded that his circumstances are so unusual as to warrant a departure from the clear rule set forth in *Logan*.

8

the expenditure of fraud proceeds.  Appendix A to USSG indicates that "[i]f, in an atypical case, the guideline section indicated for the statute of conviction is inappropriate because of the particular conduct involved, use the guideline section most applicable to the nature of the offense conduct charged in the count of which the defendant was convicted."

A sentencing court's factual findings must be supported by a preponderance of the evidence, and we review such findings under the clearly erroneous standard.  The sentencing court's interpretations of the guidelines, being conclusions of law, are reviewed de novo.  *United States v. McCaskey*, 9 F.3d 368, 372 (5th Cir. 1993), *cert. denied*, 114 S. Ct. 1565 (1994).

The district court correctly applied the USSG in computing Boothe's sentence.  The court, following the presentence report, grouped Boothe's convictions and determined his offense level for the most serious counts—the money laundering convictions under 18 U.S.C. § 1956(a)(1)(A)(i)—in compliance with USSG § 3D1.2 and 3D1.3.  The base offense level was 23 because of the $54,500 amount of funds laundered.  *See* USSG § 2S1.1(a).  Boothe has alleged no specific facts supporting his argument that his conduct was atypical of money laundering.  Furthermore, Boothe has not challenged his money laundering conviction, where the jury implicitly found, as per the trial court's instructions, that Boothe conducted financial transactions involving proceeds

from unlawful activity "with the intent to promote the carrying on" of the activity. According to the USSG, that type of conduct is the very conduct Congress intended to prevent. *See* USSG § 2S1.1 comment. Thus, Boothe's argument is without merit.

## Conclusion

For the foregoing reasons, we AFFIRM.