# UNITED STATES COURT OF APPEALS
# FIFTH CIRCUIT

_____

No. 91-3939

(Summary Calendar)

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

CLINICAL LEASING SERVICE, INC., ET AL.,

Defendants,

MELVIN SOLL and LEROY T. BRINKLEY,

Defendants-Appellants.

_____

Appeal from the United States District Court
For the Eastern District of Louisiana
(90 CV 4364 H)

_____

(December 10, 1992)

Before GARWOOD, JONES, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:[*]

The government brought suit against defendants, Melvin Soll and Leroy Brinkley, seeking to hold them personally liable for fines imposed against their corporation, Clinical Leasing Service, Inc. ("Clinical"), for violations of the Federal Controlled Substances Act ("FCSA"), 21 U.S.C. § 842 et. seq. (1988). A jury

---

[*] Local Rule 47.5.1 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

found Soll and Brinkley liable for the corporation's fines on the grounds that Clinical was the alter ego of Soll and Brinkley, and that Clinical was used by them to frustrate a legislative purpose. Soll and Brinkley appeal, arguing that the district court improperly instructed the jury and that the district court's actions and comments denied them a fair trial. Finding no error, we affirm.

## I

The government originally filed suit against Clinical, seeking fines for registration and recordkeeping violations of the FCSA.[1] *See* 21 U.S.C. § 842, et. seq. (1988). The district court imposed a $337,000 civil fine on the corporation. Soll and Brinkley made a settlement offer to pay the fine over several years,[2] but the government refused. The government then seized the available assets of Clinical, but these were valued at less than $15,000. Consequently, the government filed suit against Clinical's only shareholders, Soll and Brinkley, seeking to find them personally liable for the balance of the fines. The government sought to pierce the corporate veil on two theories: (1) alter ego and (2)

---

[1] Clinical operated the Delta Women's Clinic (the "Clinic") in New Orleans. The U.S. Drug Enforcement Agency ("DEA") discovered that the Clinic was dispensing controlled substances in violation of the FCSA.

[2] Brinkley was the President and a director of Clinical, while Soll was the Secretary-Treasurer and a director. Both owned *all* of Clinical's outstanding stock.

frustration of a legislative purpose.[3]  The jury found in favor of the government on both theories.

Soll and Brinkley now challenge the verdict, contending that the district court erred in:

(a) improperly instructing the jury on the alter ego theory;

(b) allowing the government to pierce the corporate veil after Soll and Brinkley had made an offer of settlement; and

(c) terminating the direct examination of Soll during trial, and making prejudicial comments during voir dire.[4]

**II**

**A**

---

[3]  This theory for piercing the corporate veil is well-established.  *See First Nat'l City Bank v. Banco Para El Comercio,* 462 U.S. 611, 630, 103 S. Ct. 2591, 2601, 77 L. Ed. 2d 46 (1983) ("[T]he Court has consistently refused to give effect to the corporate form where it is interposed to defeat legislative policies.");  *see also Bangor Punta Operations, Inc. v. Bangor & Aroostook R.R. Co.,* 417 U.S. 703, 713, 94 S. Ct. 2578, 2584, 41 L. Ed. 2d 418 (1974) ("Although a corporation and its shareholders are deemed separate entities for most purposes, the corporate form may be disregarded in the interests of justice where it is used to defeat an overriding public policy.").

[4]  In their reply brief, Soll and Brinkley also challenge the verdict for:  (a) insufficient evidence of neglect of corporate formalities; (b) insufficient evidence of undercapitalization; and (c) the unconstitutional application of the "frustration of legislative purpose" theory for corporate disregard.  However, we will not consider these arguments on appeal as they were not raised in the initial brief.  *See Peteet v. Dow Chem. Co.,* 868 F.2d 1428, 1437 (5th Cir.) ("We may not review arguments raised for the first time in the appellant's reply brief."), *cert. denied,* 493 U.S. 935, 110 S. Ct. 328, 107 L. Ed. 2d 318 (1989).

Soll and Brinkley argue that the district court failed to instruct the jury properly on the Louisiana law[5] of piercing the corporate veil under the alter ego theory. We review jury instructions for abuse of discretion. *See Koonce v. Quaker Safety Products & Mfg. Co.,* 798 F.2d 700, 719 (5th Cir. 1986) ("The district judge `has wide discretion to select his own words and to charge in his own style.'" (quoting *Sandidge v. Salen Offshore Drilling Co.,* 764 F.2d 252, 262 (5th Cir. 1985))). "If the jury instructions are `comprehensive, balanced, fundamentally accurate, and not likely to confuse or mislead the jury, the charge will be deemed adequate.'" *Id.* (quoting *Scheib v. Williams-McWilliams Co.,* 628 F.2d 509, 511 (5th Cir. 1980)). "The crucial issue on review is whether the jury had an understanding of the issues and its duty to determine those issues." *Id.*

Under Louisiana law, shareholders are generally not held individually responsible for debts of the corporation. *Kingsman Enterprises v. Bakersfield Elec. Co.,* 339 So. 2d 1280, 1282 (La. App. 1st Cir. 1976). However, where the corporation is merely the alter ego of the shareholder, Louisiana courts have ignored the corporate form and have held the individual shareholder or

---

[5] Though Clinical was incorporated in Delaware, with Louisiana as its principal place of business, the parties agree, *see* Brief for Soll at 9-10; Brief for United States at 30, that Louisiana law governs whether Soll and Brinkley should be held personally liable for Clinical's debts. *See* Restatement (Second) Conflicts of Law § 306 (1971) ("The obligations owed by a majority shareholder to the corporation . . . will be determined by the local law of the state of incorporation, *except* . . . where, with respect to the particular issue, *some other state has a more significant relationship . . . .*" (emphasis added)).

-4-

shareholders liable. *Id.* In applying this alter ego doctrine, Louisiana courts have traditionally focused on the following five elements: (1) commingling of corporate and shareholder funds; (2) failure to follow statutory formalities for incorporation and the transaction of corporate affairs; (3) undercapitalization of the corporation; (4) failure to provide separate bank accounts and bookkeeping records; and (5) failure to hold regular shareholder or director meetings. *Id.* n.1; *see also Jones v. Briley,* 593 So. 2d 391, 395 (La. App. 1st Cir. 1991) (using five-element test); *GI's Club of Slidell, Inc. v. Am. Legion Post #374,* 504 So. 2d 967, 968 (La. App. 1st Cir. 1987) (same); *Harris v. Best of Am. Inc.,* 466 So. 2d 1309, 1315 (La. App. 1st Cir.) (same), *writ denied,* 470 So. 2d 121 (La. 1985).

In charging the jury, the district court included the elements above, but added two more: (a) failure to pay dividends; and (b) withdrawal of corporate funds for the personal use of the stockholders. *See* Record on Appeal, vol. 7, at 147-48. Soll and Brinkley argue that the district court abused its discretion in not strictly adhering to the five elements enumerated in *Kingsman*. We disagree.

First, Soll and Brinkley have not cited, nor has this Court found, a single Louisiana case suggesting that a court is limited to the five factors in *Kingsman*. Moreover, the court in *Kingsman* recognized that the five factors it listed are not exclusive. *See Kingsman,* 339 So. 2d at 1282 n.1 ("These factors may include *but are not limited* to . . . .").

Second, Louisiana courts have recognized that the additional factors given by the district court are proper criteria for determining shareholder liability under the alter ego theory. *See Riggins v. Dixie Shoring Co., Inc.,* 592 So. 2d 1282, 1283 (La. 1992) ("Some of the many factors which may properly be considered include: . . . non-payment of dividends, . . . [and] siphoning of funds of the corporation . . . ."); *Rivers v. Schlumberger Well Surveying Corp.,* 389 So. 2d 807, 813 (La. App. 3d Cir. 1980) (considering the paying of dividends as a factor in deciding whether to pierce the corporate veil); *Dillman v. Nobles,* 351 So. 2d 210, 214 (La. App. 4th Cir. 1977) (considering the withdrawal of corporate funds for personal use as a factor in deciding whether to pierce the corporate veil). Therefore, we find no abuse of discretion in the district court's formulation of factors to consider under the alter ego theory.

Soll and Brinkley also contend that the district court abused its discretion by failing to explain alter ego liability in its charge to the jury. *See Baker v. Raymond Int'l, Inc.,* 656 F.2d 173, 180 (5th Cir. 1981) (holding that it is reversible error for a district court to fail to "present adequately and in context the factors that might warrant the imposition of [alter ego] liability"), *cert. denied,* 456 U.S. 983, 102 S. Ct. 2256, 72 L. Ed. 2d 861 (1982). After reviewing the record, we find that the district court adhered to *Baker's* prescriptions.

In *Baker,* we first noted that a court should explain "at least the rudiments of limited liability." *Baker,* 656 F.2d at 180. For

example, we stated that a court should instruct a jury that shareholders are "immune from liability for its debts in the absence of . . . exceptional circumstances." *Id.* The district court fulfilled this requirement by stating that "as a general rule, shareholders are not responsible for debts of the corporation. . . . However, under certain circumstances . . . shareholders become liable individually for corporate debts." Record on Appeal, vol. 7, at 146.

Second, we stated that a court should describe to the jury the "degree of control that must be found to establish that an ostensibly separate corporation is a mere instrumentality [i.e., alter ego]." *Baker,* 656 F.2d at 180. For example, in the context of a parent-subsidiary relationship, we noted that a court should instruct the jury that to hold the dominant party liable, "the jury must find that this control `amounts to total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own.'" *Id.* at 181 (quoting *Krivo Indus. Supply Co. v. National Distillers & Chem. Corp.,* 483 F.2d 1098, 1106 (5th Cir. 1973)). The district court also met this requirement by instructing the jury that to find Soll and Brinkley liable, it had to find them to be "indistinguishable" from the corporation. *See* Record on Appeal, vol. 7, at 146-47.[6]

---

[6]   Moreover, this instruction complied fully with Soll and Brinkley's Requested Charge No. 5. *See* Soll's Record Excerpts at 22; *see also Holley v. Palermo,* 461 So. 2d 539, 542 (La. App. 3d Cir. 1984) (holding that "a creditor may pierce the corporate veil where . . . the corporation has ceased to be distinguishable from

-7-

Third, we indicated in *Baker* that a court should instruct the jury to weigh all the factors given, but not consider any one to be dispositive. *Baker,* 656 F.2d at 181. The district court so advised the jury by stating that "[n]o one factor determines whether the corporate form should be disregarded. I have given you seven of them. No one determines by itself whether you should disregard the corporate form." Record on Appeal, vol. 7, at 148.

Lastly, we stated that a court should "elaborate[] the significance of [a specific] factor" where warranted by the facts. *Baker,* 656 F.2d at 181. Soll and Brinkley contend that the district court erred in not elaborating on the element of undercapitalization.[7] Specifically, they argue that the district court should have instructed the jury that continuous corporate operations for a reasonable period of time are per se indicative of adequate capitalization. We disagree.

In *Matter of Multiponics, Inc.,* 622 F.2d 709, 717 (5th Cir. 1980), we stated that "the concept of undercapitalization has never been precisely defined." "[T]his inquiry is highly factual and may vary substantially with the industry, size of the debt, account methods employed, and like factors." *Id.* Therefore, the law does not provide that sustained corporate operations preclude a finding of undercapitalization.

---

its shareholders").

[7] Concerning this element, the district court stated "[w]hat is adequate capitalization depends upon the nature of the business of the corporation." Record on Appeal, vol. 7, at 147.

Furthermore, "[t]he trial court has no duty to give the jury an exegesis of legal principles that might enable a plaintiff to recover." *Laird v. Shell Oil Co.,* 770 F.2d 508, 510 (5th Cir. 1985); *see United States v. Jon-T Chemicals, Inc.,* 768 F.2d 686, 694 n.8 (5th Cir. 1985) ("We do not require a district court [in instructing a jury on alter ego liability] to list and expressly consider every factor that might be relevant to an ultimate factual issue. This would convert even a simple issue into a lengthy ordeal and would virtually ensure that a district judge would hear only a handful of case in his or her lifetime."), *cert. denied,* 475 U.S. 1014, 106 S. Ct. 1194, 89 L. Ed. 2d 309 (1986). Because the jury instructions were fundamentally accurate, and gave the jury a basic understanding of the issues, we find no abuse of discretion.[8]

**B**

Soll and Brinkley next argue that the district court erred by not finding that the government was equitably estopped from pursuing its suit. They specifically contend that it was inequitable for the government, on the one hand, to reject their

---

[8] Soll and Brinkley also contend that the district court erred in submitting the "frustration of legislative purpose" theory to the jury without evidence that the stockholders were personally involved in the FCSA violations. However, we need not reach this issue on appeal. The jury was asked separate interrogatories about the traditional alter ego theory and the frustration of legislative purpose theory, and answered *both* inquiries against the stockholders. *See* Record on Appeal, vol. 4, at 990. Because the district court's instructions on alter ego liability were proper, and Soll and Brinkley have not otherwise disputed their liability under this theory, judgment for the government was justified even without considering the frustration of legislative purpose question.

settlement offer and oppose Clinical's bankruptcy petition,[9] and on the other hand, to initiate suit against them in hopes of finding them personally liable.  We strongly disagree.

In support of their novel proposition))that as a prerequisite to any suit piercing the corporate veil, a plaintiff (1) must accept any settlement offer submitted by shareholders,[10] and (2) must not oppose the corporation's bad faith resort to the bankruptcy laws[11]))Soll and Brinkley cite a single case which is irrelevant to this issue.[12] Rather than applying equitable estoppel to prevent suits against individual shareholders, some courts have used equitable estoppel to allow plaintiffs to pierce the corporate veil.  *See, e.g., Matter of Kaiser,* 791 F.2d 73, 75 (7th Cir.) ("The rules under which the corporate veil may be pierced go by

---

[9]    As the government proceeded to collect the fine for violating the FCSA, Clinical filed a petition for bankruptcy.  The government moved to dismiss the petition, alleging that (1) the petition was filed in bad faith; and (2)  Clinical was not a potentially viable business capable of rehabilitation.  The bankruptcy court dismissed Clinical's petition, finding both of these arguments applicable. *See* Government Exhibit 21, *included in* Government Record Excerpts.

[10]    We do not know of any good reason why a plaintiff should have to accept a settlement offer by shareholders, particularly where, as in this case, the shareholders had a documented record of:  (a) not filing tax returns, *see* Government Exhibit 5, at 37 (statement of Melvin Soll); (b) filing bankruptcy petitions in bad faith, *see* Government Exhibit 21; and (c) ignoring DEA warnings. *See* Record on Appeal, vol. 6, at 178-80.

[11]    *See supra* note 9.

[12]    Soll and Brinkley cite our decision in *Gibraltar Sav. v. LDBrinkman Corp.,* 860 F.2d 1275 (5th Cir. 1988).  *See* Brief for Soll at 20.  However, nowhere in this case do we discuss equitable estoppel in the context of preventing a party from piercing the corporate veil.

many names, . . . such as alter ego and *equitable estoppel.*" (emphasis added)), *cert. denied,* 479 U.S. 1011, 107 S. Ct. 655, 93 L. Ed. 2d 710 (1986). Therefore, we find no error in the district court's refusal to apply equitable estoppel.

## C

Lastly, Soll and Brinkley claim that they were denied a fair trial. During trial, the district court terminated Soll's direct examination because of leading questions. During voir dire, the district court warned the jury on several occasions to disregard the fact that Soll and Brinkley operated an abortion clinic. Soll and Brinkley contend that the district court (a) abused its discretion by cutting off Soll's direct examination, and (b) erred because its warnings "unduly sensitized" the jury to the volatile issue of abortion.

"The conduct of a fair trial is vested in the sound discretion of the trial judge." *Cranberg v. Consumers Union of U.S., Inc.,* 756 F.2d 382, 391 (5th Cir.), *cert. denied,* 474 U.S. 850, 106 S. Ct. 148, 88 L. Ed. 2d. 122 (1985). "On review, this conduct will be measured against a standard of fairness and impartiality." *Id.* Soll and Brinkley contend that the district court abused its discretion in terminating Soll's direct testimony "without any explanation." Brief for Soll at 23. We disagree.

When the district court terminated Soll's direct testimony, the court sustained a specific objection by government's counsel to

-11-

leading questions.[13]   Therefore, we find that the district court adequately explained its actions.

Furthermore, the exclusion of Soll's direct testimony was within the sound discretion granted the district court by Fed. R. Evid. 611.[14]  The record indicates that Soll's counsel attempted to elicit direct testimony from Soll through leading questions.  *See* Record on Appeal, vol. 6, at 197, 200.  A few minutes before terminating direct testimony, the district court specifically warned Soll's attorney not to lead the witness.  *See id.* at 197. The record further indicates that the district court warned Soll's

---

[13]     Soll's testimony immediately preceding termination was:

BY MR. KERRIGAN [Soll's counsel]:

Q.  Did you [Soll] also have, as Mr. Brinkley did in his office, a computer terminal at your home?

A.  Yes.

Q.  Is that where you law office is or was?

A.  That's correct.

Q.  So, information that was available from the clinic on the things that the other witnesses have talked about were available to you at your own))

MR.  WATSON [government's counsel]:   Objection, Your Honor.  He's continuing to lead.

THE COURT:  I sustain the objection.  We're going to cut the questions now.   You can't raise them properly. Sorry.  Let's go on.

Record on Appeal, vol. 6, at 200.

[14]     Under Fed. R. Evid. 611(a), a district court "shall exercise reasonable control over the mode and order of interrogating witnesses." Furthermore, "[l]eading questions should not be used on the direct examination of a witness." Fed. R. Evid. 611(c).

-12-

attorney about leading questions on at least seven previous occasions. *See id.* at 16-17, 32, 46, 48, 135, 147, 186. Under these circumstances, we find no abuse of discretion in the district court's termination of Soll's direct testimony.

Soll and Brinkley further allege that the district court's warnings concerning abortion denied them a fair trial. Soll and Brinkley did not object to these comments, and therefore, we review this aspect of the district court's conduct for plain error. *See Miles v. Olin Corp.,* 922 F.2d 1221, 1228 (5th Cir. 1991) ("Because [appellant] did not object to the district court's comments in this case, we review only for plain error."). "Only an error so fundamental that it generates a miscarriage of justice rises to the level of `plain error.'" *Kuehne & Nagel (AG & CO) v. Geosource, Inc.,* 874 F.2d 283, 292 (5th Cir. 1989).

Soll and Brinkley seem to argue that in warning the jury repeatedly not to consider abortion,[15] the district court somehow "planted" abortion as a prejudicial factor in the minds of the jury. However, the record indicates that Soll's own attorney repeatedly referred to abortion in addressing the jury during his opening statement.[16] Thus, rather than create prejudice, the district court's admonitions attempted to rectify the prejudice caused by Soll and Brinkley's own counsel.[17] Furthermore, it would

---

[15] *See* Record on Appeal, vol. 5, at 7, 12, 24, 29.

[16] *See, e.g.,* Record on Appeal, vol. 5, at 61, 64-65.

[17] For example, during his opening statement, Kerrigan stated:

be nonsensical to find that the district court erred in giving cautionary instructions where Soll and Brinkley themselves requested extensive voir dire on abortion.  See Record on Appeal, vol. 4, at 1031, 1033.  Thus, we do not find the district court's cautionary instructions so prejudicial as to constitute error, plain or otherwise.

## III

For the foregoing reasons, we **AFFIRM.**

---

[Brinkley] got involved in the pro-choice movement, and he started a company called National Family Planning, and also did business as Controlled Parenthood.  That company around this country made information available to ladies in order to get safe pregnancy terminations.

Why was he aware of that?  Because one of his friends in college died because of a botched abortion. He formed a business with Mr. Soll, and they felt that this was information and this was service that people were entitled to.

Record on Appeal, vol. 5, at 65.