UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-7646
_____


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                    versus

DUANE ALBERT ANDERSON,

                                        Defendant-Appellant.


                    * * * * * *



                    _____

                    No. 92-7733
                    _____



UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                    versus

MARK CHARLES BARNETT, a/k/a
Neil Thomas Hanley,

                                        Defendant-Appellant.

_____

Appeals from the United States District Court for the
            Southern District of Mississippi
_____
                  (October 14, 1993)

Before GARWOOD, DAVIS and SMITH, Circuit Judges.

GARWOOD, Circuit Judge:

These appeals, consolidated for purposes of oral argument, arise from the kidnapping and subsequent sexual abuse of Deanna Marie Caveny (Caveny). Defendants-appellants Duane Albert Anderson (Anderson) and Mark Charles Barnett, a/k/a Neil Thomas Hanley (Barnett), challenge the sentences imposed following the entry of their pleas of guilty to the federal kidnapping offense. Anderson contends that the district court erred in calculating his base offense level for kidnapping by allegedly counting the kidnapping offense twice, first by relying on the kidnapping guideline, and second by referring to the sexual abuse guideline and enhancing that base offense level for abduction of the sexual abuse victim. Barnett also challenges the reference to the sexual abuse guideline in calculating his kidnapping offense level, arguing, *inter alia*, that the sexual abuse committed was a state, and not federal, offense and therefore could not be "another offense" under the federal sentencing guidelines. Finally, defendants assert that the district court abused its discretion in departing upward from the resulting guideline range on the grounds that Caveny suffered extreme psychological injury and that the defendants' actions were unusually heinous and cruel. Finding no reversible error and no abuse of discretion, we affirm.

## Facts and Proceedings Below

On April 7, 1992, Anderson and Barnett forcibly abducted Caveny, a 29-year-old mathematics professor, from the parking lot of a laundromat near her apartment in Charleston, South Carolina.

2

Anderson seized her and attempted to force her into her automobile, a maroon 1981 Chevrolet Citation; Barnett assisted him by opening the door of the vehicle. Following a brief struggle, Caveny surrendered her car keys to Anderson. After the defendants subdued Caveny and got into the car with her, Barnett drove to a nearby shopping center parking lot where he used Caveny's automatic teller card to obtain approximately $200 from an automatic teller machine.

With Barnett driving and Anderson in the back seat with Caveny, the trio traveled toward Alabama. Several hours after the abduction, Anderson raped Caveny in the rear seat of her car. During the drive to Alabama, Anderson raped her two or three additional times. Anderson also subjected Caveny to anal sex and demanded that she perform oral sex upon him. Over the course of the kidnapping ordeal, Anderson and Barnett threatened to kill Caveny and told her about other people they had killed or planned to kill; they proposed getting rid of any evidence against them by burning her body and her car.

During the night, the defendants stopped at a motel in Bessemer, Alabama. Barnett registered in the name of Neil Hanley. The manager of the hotel remembered that Barnett did not know the license number of the vehicle he was driving and that he went outside to the car to obtain that information. Barnett told the manager there would be two persons in the room, but the manager saw only Barnett. In the motel room, Anderson raped Caveny at least twice. Caveny attempted to get help by leaving messages torn from

3

soap wrappers in the motel room.[1]

On the morning of April 8, the defendants drove Caveny to Meridian, Mississippi. When Barnett stopped at a convenience store to buy food, Caveny was able to get out of the car and obtain help at a nearby store. According to a presentence investigation report (PSI) prepared by the United States Probation Office, Anderson "followed" her from the car and was subsequently arrested.[2] Barnett drove off in Caveny's car and was not apprehended until April 10, 1992, when he was arrested for trespassing by the Orlando, Florida Police Department, and a background check revealed that Barnett was wanted by federal authorities in connection with the Caveny kidnapping.

A grand jury indicted Anderson and Barnett in a two-count indictment charging that defendants (1) kidnapped Caveny and intentionally transported her in interstate commerce from Charleston, South Carolina, to Meridian, Mississippi, in violation of 18 U.S.C. § 1201(a)(1); and (2) unlawfully transported a stolen motor vehicle in interstate commerce, in violation of 18 U.S.C. § 2312. Anderson and Barnett were also charged with aiding and

---

[1]     During the stay in the motel room, Caveny was allowed to shower. Using the wrapper from a bar of soap, she tore the printed letters H, E, L, and P and arranged these letters behind the toilet, hoping someone who could aid her would find them. Caveny also concealed a pair of bloody underwear in the bed clothing. Federal agents later recovered both the letters and the underwear.

[2]     A dispute arose at Anderson's sentencing hearing over whether, when Anderson "followed" Caveny from the vehicle, he was aiding Caveny in leaving the car and calling the police or chasing her to prevent her escape. Anderson makes no complaint on appeal respecting any matter related to this dispute.

4

abetting each other in the commission of both charged offenses, in violation of 18 U.S.C. § 2.  Both defendants pleaded guilty to the kidnapping count in return for dismissal of the motor vehicle charge.

PSIs were prepared for Anderson and Barnett, using the 1991 edition of the Sentencing Guidelines.  The PSIs began calculations of the defendants' offense levels with the kidnapping guideline, U.S.S.G. § 2A4.1, which carries a base offense level of 24. U.S.S.G. § 2A4.1(a).  The Sentencing Commission recognized the possibility that a kidnapping victim might be sexually exploited during the kidnapping offense and provided a 3-level increase, to level 27, in such an event.  U.S.S.G. § 2A4.1(b)(5).  The kidnapping guideline goes on to further provide, however, that if "another offense" (unspecified by the guidelines) was committed during the kidnapping, the sentencing court should increase the offense level to the level applicable to the other offense if the resulting offense level is higher.  U.S.S.G. § 2A4.1(b)(7).[3]  The

---

[3]    Section 2A4.1(b)(7) provides:

"[I]f another offense was committed during the kidnapping, abduction, or unlawful restraint, increase to

(A)  the offense level from the Chapter Two offense guideline applicable to that other offense if such offense guideline includes an adjustment for kidnapping, abduction, or unlawful restraint, or otherwise takes such conduct into account; or

(B) 4 plus the offense level from the offense guideline applicable to that other offense, but in no event greater than level 43, in any other case,

if the resulting offense level is greater than that

PSIs then referred to section 2A3.1, the guideline for criminal sexual abuse. This section establishes a base offense level of 27 and allows an enhancement of 4 levels, to level 31, if the victim of the sexual abuse was abducted. U.S.S.G. § 2A3.1(b)(5). The PSIs calculated the defendants' offense levels to be 31, the level reached by reference to the sexual abuse guideline, because that level was greater than the level 27 resulting under the kidnapping guideline. The PSIs credited both defendants with acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), and bestowed on them a 2-level reduction, yielding net total offense levels for each of 29. Finally, the PSIs noted that ample justification existed for the district court to make an upward departure, based on circumstances not otherwise taken into account by the guidelines, such as the psychological injury to Caveny and the defendants' extreme conduct. U.S.S.G. §§ 5K2.0, 5K2.3, and 5K2.8.

Anderson and Barnett both objected to their PSIs on the ground that the enhancement of the sexual abuse guideline for abduction, when they were convicted of abduction, was essentially a double counting of the kidnapping offense and therefore violated the prohibition against double jeopardy.

The district court denied defendants' objections and sentenced them according to the recommendations of the PSIs, using the offense levels of 29 reached by reference to the sexual abuse guideline, with a credit for acceptance of responsibility. The court departed upward by 4 levels, for total offense levels of 33,

---

determined above."

on the bases of the extreme psychological harm sustained by Caveny and the extreme conduct exhibited by Anderson and Barnett.

Anderson's criminal history category of III, with an offense level of 33, yielded a sentencing range of 168 to 210 months. The district court sentenced him to 200 months imprisonment, followed by 5 years supervised release. Barnett, with a criminal history category of V and an offense level of 33, faced a sentencing range of 210 to 262 months. He received a term of 240 months imprisonment and 5 years supervised release.

On appeal, Anderson and Barnett challenge the calculation of their offense levels and the district court's upward departure.

## Discussion

I.   Application of the Kidnapping Guideline

We will uphold a sentence imposed pursuant to the guidelines unless it is imposed in violation of law, is the result of incorrect application of the guidelines, or is an unreasonable departure from the applicable guideline range. 18 U.S.C. § 3742(e); *United States v. Buenrostro*, 868 F.2d 135, 139 (5th Cir. 1989), *cert. denied*, 110 S.Ct. 1957 (1990). We review determinations of legal principles *de novo* and factual findings for clear error. *United States v. Mourning*, 914 F.2d 699, 704 (5th Cir. 1990).

*A.   Anderson's claims*

In sentencing the defendants, the district court began with the kidnapping guideline, section 2A4.1, with its base offense level of 24. Next, as directed by section 2A4.1(b)(7), the court referred to the criminal sexual abuse guideline, section 2A3.1,

7

which carries a base offense level of 27. Finally, the court enhanced the sexual abuse offense level for abduction of the victim, reaching an offense level (before any departure) of 31.

Anderson does not argue that the district court improperly turned to section 2A3.1 from section 2A4.1(b)(7). Instead, he complains that it was error for the district court to enhance the sexual abuse base offense level for the abduction of the victim, reasoning that the court already took the kidnapping offense into consideration when it began its calculations with section 2A4.1, the kidnapping guideline. Of the 3 offense levels considered,[4] he claims that the original level 24 and the final level 31 were each punishment for the kidnapping offense. This, he contends, constitutes impermissible double counting. Anderson maintains that the proper result would be to compare the base offense levels for the kidnapping and sexual abuse guidelines and choose the higher, without enhancing those levels for specific offense characteristics. Under this theory, Anderson would have a base offense level of 27, the base offense level for criminal sexual abuse, as that level is higher than the base offense level of 24 for kidnapping.

Anderson ignores the clear direction of the guidelines, which expressly provide that an entire guideline shall be applied upon reference from another guideline:

---

[4] The 3 offense levels alluded to by Anderson are (1) level 24, the base offense level under the kidnapping guideline; (2) level 27, the base offense level under the sexual abuse guideline; and (3) level 31, the offense level reached after enhancement of the sexual abuse offense level for abduction of the victim.

8

> "Unless otherwise expressly indicated, a reference to another guideline, or an instruction to apply another guideline, refers to the entire guideline, *i.e.*, the base offense level *plus all applicable specific offense characteristics* and cross references." U.S.S.G § 1B1.5. (Emphasis added).

The commentary to section 1B1.5 directs the court to use the greater *final* offense level when directed to apply another guideline if it results in a greater offense level, even to the point of including any applicable Chapter Three adjustments. *Id.*, comment. (n.3). *See also United States v. Galloway*, 963 F.2d 1388, 1392 (10th Cir.), *cert. denied*, 113 S.Ct. 418 (1992) (enhancement of criminal sexual abuse offense level for abduction of victim did not constitute cumulative punishment of defendant convicted of, and sentenced for, kidnapping).

Prior decisions of this Circuit and others demonstrate that the district court followed the correct procedure in calculating Anderson's offense level under the kidnapping guideline. We approved the application of the "other offense" guideline pursuant to the section-switching provision of the kidnapping guideline in *United States v. Jackson*, 978 F.2d 903, 913 (5th Cir. 1992), *cert. denied*, 113 S.Ct. 2429 (1993). In that case, the district court sentenced the defendants, who were convicted of kidnapping, under the guideline for murder following the direction of section 2A4.1(b)(5),[5] which provided that if the result of applying the kidnapping guideline were less than that resulting from application of another offense, the guideline for the other offense should be

---

[5] The defendants in *Jackson* were sentenced under the 1990 version of the guidelines, in which the provision now contained in section 2A4.1(b)(7) was included in section 2A4.1(b)(5).

applied. *Jackson*, 978 F.2d at 913. *See also United States v. Rocha*, 916 F.2d 219, 242-244 (5th Cir. 1990), *cert. denied*, 111 S.Ct. 2057 (1991) (affirming enhancement of kidnapping guideline on basis of extortion); *United States v. DePew*, 932 F.2d 324, 329 (4th Cir.), *cert. denied*, 112 S.Ct. 210 (1991) (affirming use of murder offense level).

Although we have not previously applied section 2A4.1(b)(7) in the context of criminal sexual abuse, the Third and Tenth Circuits have affirmed the use of section 2A3.1 to enhance a sentence for kidnapping. *See United States v. Pollard*, 986 F.2d 44, 47 (3rd Cir.), *cert. denied*, 113 S.Ct. 2457 (1993); *United States v. Galloway*, 963 F.2d at 1391-1392. These decisions demonstrate the correctness of the district court's actions in calculating the defendants' total offense levels.

*B.   Barnett's claims*

Barnett contends that the district court erred in not making a factual determination that his actions constituted the crime of sexual abuse before enhancing the kidnapping offense for the sexual abuse.[6] He proposes two different reasons why he should not be

---

[6]      In his briefs on appeal, Barnett does not oppose the technical application of section 2A4.1(b)(7), with its reference to section 2A3.1. At oral argument, however, counsel for Barnett challenged the district court's use of section 2A4.1(b)(7), and by reference section 2A3.1, on the ground that an enhancement for sexual exploitation of a kidnapping victim is already provided in section 2A4.1(b)(5). If the criminal sexual abuse guideline would always provide a higher offense level than that reached under the kidnapping guideline, he argues, the three-level enhancement of section 2A4.1(b)(5) would be superfluous. This argument, even had it been timely raised, is unavailing. The guidelines expressly contemplate that the effect of sexual abuse of a kidnapping victim is not limited to the three-level increase provided by § 2A4.1(b)(5), but could be calculated as "another

held responsible for the sexual abuse.

First, in his original brief, as before the district court, Barnett focuses on his contention that he did not personally commit any sexual offense, and that it was his codefendant Anderson who sexually assaulted Caveny. Barnett argues that he only drove the car, and that, because he was driving through heavy fog with the car radio turned up, he was "virtually unaware" of what was transpiring between Anderson and Caveny in the back seat of the car. He also claims that he was in the shower when Anderson sexually assaulted Caveny in the motel room. As a result, he maintains, he could be held accountable for auto theft but not for sexual abuse.

This argument lacks merit. The district court sentenced Barnett for the kidnapping of Caveny, not for the sexual abuse which occurred.[7] The court considered the effect of the sexual

_____

offense" under section 2A4.1(b)(7) by reference to section 2A3.1. The background commentary explaining section 2A4.1(b)(7) uses criminal sexual abuse, section 2A3.1, as an example of "another offense" for purposes of referral to another guideline. U.S.S.G. § 2A4.1, comment. (backg'd) (1991).

In addition, Barnett's concern, that section 2A4.1(b)(5) is made superfluous if section 2A4.1(b)(7) provides enhancement for sexual abuse of a kidnapping victim, is misplaced. The base offense level of 27 provided in section 2A3.1 governs sexual conduct in violation of 18 U.S.C. §§ 2241 and 2242. Other sexual offenses which could be the object of section 2A4.1(b)(7)'s reference to "another offense" pertain to guidelines with much lower offense levels than section 2A4.1. *See, e.g.*, U.S.S.G. § 2A3.2 (criminal sexual abuse of a minor, based on violation of 18 U.S.C. § 2243(a): base offense level 15); U.S.S.G. § 2A3.3 (criminal sexual abuse of a ward, based on violation of 18 U.S.C. § 2243(b): base offense level 9); U.S.S.G. § 2A3.4 (abusive sexual contact, based on violation of 18 U.S.C. § 2244(a)(1),(2),(3): base offense levels of 16, 12, 10).

[7] That Barnett may have admitted to aiding and abetting Anderson's sexual offenses does not change the fact that the

11

abuse only as a specific offense characteristic of the kidnapping offense. Specific offense characteristics, unless otherwise specified, are determined on the basis of relevant conduct and are not limited to stipulations made by a defendant entering a plea bargain. U.S.S.G. § 1B1.3(a). There is ample evidence in the record on appeal to support the district court's treatment of the sexual abuse of Caveny as conduct relevant to Barnett's kidnapping offense.[8]

Barnett was charged with, and pleaded guilty to, aiding and abetting Anderson in the kidnapping of Caveny. At his plea hearing, the government presented the factual basis for the plea. This summary of the events underlying the charges brought against Barnett contained references to the sexual assaults of Caveny. Barnett agreed with the entire factual scheme as presented by the government and assured the district court, upon close questioning, that he understood the implications of the aiding and abetting charge against him and that he did not contest it.[9] Although it is

---

district court applied the *kidnapping* guideline, not the *criminal sexual abuse* guideline. The court's reference to section 2A3.1 was at the direction of, and in application of, section 2A4.1(b)(7).

[8] The district court was clearly not required to credit Barnett's claim that he was unaware of what was going on over the course of two days between the other two occupants of the same vehicle and motel room when that activity involved at least seven sexual assaults.

[9] The following discussion occurred at the plea hearing:

"Q. [By the court] Now, you are also charged with the violation of Section 2 of Title 18. This is the aider and abetter statute. And it says that whoever commits an offense against the United States or aids, abets, counsels, demands, induces or procures it's [sic]

12

undisputed that Barnett did not personally sexually abuse Caveny during the kidnapping offense, he is liable as an aider and abetter for the relevant conduct of Anderson. The district court could properly consider the effect of Anderson's sexual offenses in sentencing Barnett.

Barnett raised his second challenge to the calculation of his offense level in his reply brief in this Court. He claims that enhancement of his kidnapping offense on the basis of the sexual abuse of Caveny was improper because he could not have been convicted of the federal crime of sexual abuse or aggravated sexual abuse.[10] This challenge is untimely. We will not consider issues raised for the first time in an appellant's reply brief. *United States v. Clinical Leasing Service, Inc.*, 982 F.2d 900, 902 n. 4 (5th Cir. 1992). Because this issue is not properly before us, we

---

commission is punishable as a principal. . . . Do you understand what the aider and abetter statute provides?
A.   Yes, I do, sir.
Q.   And do you understand how it figures into this matter?
A.   Yes, I do.
Q.   It says that if you aided and abetted someone else who was in the midst of -- who was in the course of committing the crime charged in Count 1 (the kidnapping charge), that makes you guilty. Do you understand that?
A.   Yes, I do.
     . . . .
Q.   It means that you are not there by accident or you didn't do some acts that lead to the commission of the crime in assisting somebody by accident or mistake or misunderstanding, but that you knowingly did something towards the commission of a crime. Do you understand that?
A.   Yes."

[10]   Although this argument applies equally to Anderson, he has not raised it either before the district court or on appeal and has thus waived it.

13

do not consider the question of whether there was sufficient evidence for the district court to conclude that the sexual assaults of Caveny constituted an offense under the state laws of South Carolina or Alabama, the states in which the sexual abuse occurred. We observe that neither defendant has ever denied that the sexual abuse occurred, nor did they argue before the district court that Anderson's conduct did not amount to a sexual offense. Nor have either ever contended, here or below, that Anderson's conduct did not amount to rape or other similar sexual offense under the laws of South Carolina or Alabama.

Even were we to address this issue, we would not agree with Barnett's position. Barnett's reading of the criminal statute is correct,[11] but he overlooks the interpretation that courts, including our own, have given section 2A4.1(b)(7)'s reference to "another offense," an interpretation which is confirmed by recently proposed amendments to section 2A4.1.

The guidelines do not define "another offense" as used in section 2A4.1 and other section-switching guidelines. Nothing in the commentary to those sections suggests that the term is limited to violations of federal law. The Sentencing Commission's May 8, 1993, proposed amendment to the commentary to section 2A4.1 confirms that it intended the language of section 2A4.1(b)(7) to

---

[11]     For sexual abuse to constitute a federal offense, it must be committed "in the special maritime and territorial jurisdiction of the United States or in a Federal prison . . . ."  18 U.S.C. §§ 2241 (aggravated sexual abuse) and 2242 (sexual abuse). Because Anderson's sexual abuse of Caveny did not occur within federal jurisdiction, neither Anderson nor Barnett could have been charged with criminal sexual abuse in a federal court.

14

include state and local, as well as federal, offenses. The amendment, scheduled to be effective November 1, 1993, and as of this writing under review by Congress, replaces the commentary's reference to "another offense" with the phrase "another federal, state, or local offense that results in a greater offense level (subsections (b)(7) and (c)(1))." 58 Fed.Reg. 27150 (1993) (proposed May 8, 1993). The Commission explains that "[t]his amendment clarifies that the references to `other offense' and `another offense' in Section 2A4.1(b)(7) . . . refer to federal, state, or local offenses." *Id.*

Were this amendment already in effect, it would be binding. "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 113 S.Ct. 1913, 1915 (1993). Further, the amendment would apply to Barnett's sentence, even though he was sentenced under an earlier version of the guidelines. Amendments to the guidelines and their commentary intended only to *clarify*, rather than effect substantive changes, may be considered even if not effective at the time of the commission of the offense or at the time of sentencing. U.S.S.G. § 1B1.11(b)(2) (1992);[12] *United States v. Evbuomwan*, 992 F.2d 70,

---

[12] Section 1.B.11(b)(2) provides in relevant part that ". . . if a court applies an earlier edition of the Guidelines Manual, the Court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes." Defendants were sentenced in September and October 1992 under the 1991 version of the guidelines. Although section 1B1.11 was not added until the November 1, 1992, version, clarifying amendments may still be applied in cases decided under

74 n.1 (5th Cir. 1993); *United States v. Aguilera-Zapata*, 901 F.2d 1209, 1213 (5th Cir. 1990).

Although the amendment is not controlling, we consider it as evidence of the Sentencing Commission's intent behind section 2A4.1(b)(7). *See United States v. Byrd*, 995 F.2d 536, 539-540 n.3 (4th Cir. 1993) (addressing proposed 1993 amendments to commentary to U.S.S.G. § 4A1.2).

Moreover, the clarification proposed by the Commission is consistent with previous applications of section 2A4.1(b)(7) in which courts enhanced the kidnapping guideline by application of other offense guidelines, without consideration of the federal jurisdictional grounds for the other offense. In *United States v. Jackson*, we upheld the application of the guideline for murder in sentencing a defendant convicted of kidnapping without discussion of whether a basis for federal jurisdiction over the murder existed.[13] *Jackson*, 978 F.2d at 913-914. In *Jackson*, we cited *Galloway* with approval. *Galloway* concerned the sexual abuse guideline, but the issue of the lack of federal jurisdiction

---

the 1991 version, because 1B1.11 was merely a reiteration of the Sentencing Commission's position on clarifying amendments. *See United States v. Aguilera-Zapata*, 901 F.2d 1209, 1213-1214 (5th Cir. 1990) (applying 1989 amendment retroactively to sentencing for offense committed prior to effective date on grounds that amendment was intended only to clarify guideline application note) (relying on *United States v. White*, 875 F.2d 427, 433 (4th Cir. 1989) (opinion by Judge Wilkins, Chairman of the United States Sentencing Commission)).

[13] Unlike the sexual abuse in the present case, the murder in *Jackson* was a federal offense because it occurred in the course of a kidnapping. 18 U.S.C. § 1111. This was not, however, the basis for our allowing the application of the murder guideline in sentencing the *Jackson* defendants.

16

apparently was not raised.  Neither the court in *Galloway* nor our court in *Jackson* expressly addressed the possibility that the lack of federal jurisdiction over the "other offense" had any bearing on the application of the section-switching provision of section 2A4.1(b)(7).[14]

In *United States v. Perez*, 897 F.2d 751 (5th Cir.), *cert. denied*, 111 S.Ct. 117 (1990), we approved an upwards adjustment based on application of the aggravated assault guideline for a defendant who was convicted of several firearms possession offenses.  U.S.S.G. § 2K2.1(c)(1), the applicable firearms guideline, allows application of other offense guidelines where a defendant used or possessed a firearm in connection with the commission of another offense.  In *Perez*, we relied on the commentary to section 2K2.1(c)(1) (1990) which expressly contemplated that a sentencing court would use state offenses to enhance a firearms offense level.  This commentary was omitted in

---

[14]    The Third Circuit has rejected a contention similar to Barnett's on the ground that federal jurisdiction over offense conduct serves to allow the sentencing court to consider all relevant conduct without regard to jurisdictional basis.  *United States v. Pollard*, 986 F.2d 44, 47 (3rd Cir.), *cert. denied*, 113 S.Ct. 2457 (1993).  In *Pollard*, the defendant lured young boys from New York City to an apartment in New Jersey where he sexually assaulted them.  As in the present case, the district court sentenced the defendant under section 2A4.1, calculating the defendant's offense level by reference to section 2A3.1.  The defendant argued that the reference to the criminal sexual abuse section was improper because he could not have been convicted in federal court of that crime.  The Third Circuit disagreed, holding that once a jurisdictional basis had been established over the kidnappings, all relevant conduct could be considered in calculating his sentence.  986 F.2d at 47.  Treating the sexual abuse as relevant conduct, the court stated that it made "no difference" that the district court lacked jurisdiction to try him for it.  *Id*

17

the 1991 guidelines under which Barnett was sentenced. However, there is nothing in the wording, structure, context, or history of the 1991 amendment (which wholly deleted sections 2K2.1, 2K2.2, and 2K2.3 and their commentary and replaced them with a new section 2K2.1 and commentary) to suggest that the omission was intended as a repudiation of this aspect of the former commentary (the new commentary to the new section 2K2.1 simply does not address this matter). *See* 1991 Guidelines Manual § 2K2.1 and commentary and Appendix C, amendment No. 374. That this omission was not an implied repudiation of that aspect of the commentary also seems evident in the 1993 proposed amendments to the guidelines. Submitted with the proposed 1993 amendment to the section 2A4.1 commentary are similar proposed changes to the section 2K2.1 commentary. These changes will clarify that "another offense" of section 2K2.1 refers to federal, state, and local offenses. *See* 58 Fed.Reg. 27150 (1993) (proposed May 8, 1993).

The district court did not err in considering the sexual abuse as "another offense" for purposes of calculating Barnett's offense level under the kidnapping guideline.

II. Upward Departure

When the district court departs from the guideline range, the departure must be reasonable, and the court must offer reasons justifying the departure in terms of the policies underlying the sentencing guidelines. *United States v. Mejia-Orosco*, 867 F.2d 216, 221 (5th Cir.), *cert. denied*, 109 S.Ct. 3257 (1989). A departure is within the discretion of the sentencing court. *United States v. Ihegworo*, 959 F.2d 26, 28 (5th Cir. 1992). A departure

18

based on circumstances already adequately considered by the guidelines is an incorrect application of the guidelines. *Williams v. United States*, 112 S.Ct. 1112, 1119 (1992).

In sentencing Anderson and Barnett, the district court departed upward, raising the defendants' total offense levels by four points.[15] Grounds for the court's departure include: (1) that there existed circumstances not already taken into consideration by the guidelines; (2) that Caveny had suffered extreme psychological harm; and (3) that the defendants had exhibited unusually heinous conduct.

The district court's stated reasons for departure are as follows:

> "[B]ased on Guideline Section[s] 5K2.0, 5K2.3 and 5K2.8, the Court finds that an upward departure in this case is called for. The Court notes that there exist[] aggravating or mitigating circumstances of a kind or a degree not adequately taken into consideration by the sentencing commission in formulating the guidelines. The victim has suffered extreme psychological injury. Her behavior patterns have been altered and the victim suffered gratuitous infliction of injury and prolonged humiliation. Additionally, the Court is convinced that the guidelines herein do not take into account the number and nature of the repeated sexual abuses imposed upon the victim here. Therefore, a four level upward departure will be made."[16]

The guidelines allow departures from applicable sentencing ranges

---

[15] Defendants challenge the grounds for, not the extent of, the departure. We note that the sentences imposed by the district court were well within the statutory range of punishment for kidnapping offenses, which is "imprisonment for any term of years or for life." 18 U.S.C. § 1201(a).

[16] The quoted language is taken from the transcript of Barnett's sentencing hearing. The district court gave the same reasons for departing upward in sentencing Anderson.

> "[u]nder 18 U.S.C. § 3553(b) . . . if the [sentencing] court finds `that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" U.S.S.G. § 5K2.0, p.s.

Anderson asserts that the guidelines already take his conduct SQ kidnapping and sexual abuse SQ into consideration and that therefore the district court should not have departed from the guideline range. The district court found, however, that the guidelines had not adequately taken into consideration either the number (at least seven) or the nature (including forced anal and oral sex) of the sexual abuse. This finding, which we hold not to be clearly erroneous, supports the court's initial decision to depart under section 5K2.0.

In addition to the general grounds of section 5K2.0, the district court found cause to depart upward in the psychological harm suffered by Caveny as a result of her ordeal. The guidelines allow upward departure "[i]f a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense . . . ." U.S.S.G. § 5K2.3, p.s. In such an instance, "[t]he extent of the increase ordinarily should depend on the severity of the psychological injury and the extent to which the injury was intended or knowingly risked." *Id.* A psychological injury is sufficiently severe where there exists (1) a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, (2) which is of an extended or continuous duration, and (3) which manifests itself by physical or psychological symptoms or by changes in behavior

20

patterns.  *Id.*

In determining the psychological effect on Caveny, the district court relied on a letter, quoted in its entirety in the victim impact section of the PSIs prepared for defendants' sentencings, in which Caveny described her ordeal and its effects on her life.  Caveny feared for her life throughout the kidnapping. Anderson and Barnett threatened to kill her and told her stories of other people they had killed or planned to kill.  They made clear to her that they needed to dispose of her because she was the only evidence against them.  Anderson told Caveny that they would burn her car and her body to destroy any evidence.  After her escape and before Barnett was apprehended by the Florida police, Caveny feared that Barnett would know that she had "snitched" to the police and would try to find her to seek revenge on her and her family. Anderson had told her that Barnett was planning to return to Florida to "`take care of someone' who had `snitched on them.'" According to her letter, the kidnapping had a profound effect on Caveny's daily life.  Caveny and her husband have moved to a new apartment.  She is reluctant to leave the apartment by herself or to be alone at home; she checks every room and closet in her apartment and experiences fears of people hiding in the trees near her apartment.  She no longer feels safe, even within her own apartment; she carries mace with her at all times and has installed extra locks on her windows and doors.  She has lost her feelings of confidence, trust, and independence.  She fears the time when Anderson and Barnett will eventually be released from prison.

Anderson and Barnett claim that any psychological injury

21

suffered by Caveny did not meet the section 5K2.3 standard and was insufficient to support an upwards departure. In addition, they contend that Caveny's letter is insufficient evidence of the psychological effects of the kidnapping ordeal and that departure was unwarranted because the government failed to produce testimony from a counselor or psychologist that Caveny's condition requires medication or therapy or otherwise meets the section 5K2.3 standard.

Anderson relies on *United States v. Fawbush*, 946 F.2d 584, 586 (8th Cir. 1991). In that case, the Eighth Circuit found insufficient to support a section 5K2.3 departure the unsubstantiated opinion of the probation officer and the fact that the victim was receiving counseling. The court acknowledged, however, that it might have reached a different result if the district court's reasons had been substantiated. *Fawbush*, 946 F.2d at 586. In a similar vein, our court held in *United States v. Lara*, 975 F.2d 1120, 1127-1128 (5th Cir. 1992), that a district court's upward departure under section 5K2.3 was not justified by the findings of a PSI which contained only conclusory statements concerning psychological harm to the victim.

In our case, however, unlike either *Fawbush* or *Lara*, the district court had before it a detailed letter from the victim describing the events in question and their significant effects on her life. This letter demonstrates substantial changes in Caveny's psychological and behavioral functioning. None of this was rebutted. While some testimony by a counselor or other expert in psychology would certainly be of value in determining this issue,

22

such evidence is not always a prerequisite for a section 5K2.3 departure. *See, e.g.*, *United States v. Miller*, 993 F.2d 16, 21 (2nd Cir. 1993) (affirming section 5K2.3 departure without requiring expert testimony).

Acknowledging that this particular issue presents a very close question, we ultimately conclude that the district court acted within its discretion in departing upward on the basis of the psychological injury. We are supported in this determination by the last ground for departure, the heinousness of the defendants' conduct, which provides strong grounds for departure.

The guidelines permit an upward departure "[i]f the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim . . . . Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation." U.S.S.G. § 5K2.8, p.s. The events in question provide such an example of unusually heinous and degrading conduct. Over the course of two days, Caveny was repeatedly raped and forced to engage in oral and anal sex, which is unusually cruel and degrading. The defendants threatened to kill her and described to her, not only tales of others they had killed, but also what they would do with her to destroy any evidence. The district court clearly did not abuse its discretion in determining that the defendants had exhibited unusually heinous and degrading conduct under section 5K2.8.

Although not always the case, here the heinousness of the conduct is in some respects the other side of the same coin as the victim's psychological harm, and the outrageousness of the

23

defendants' actions in turn supports the district court's departure on the psychological injury grounds. One may infer some psychological harm to Caveny from the conduct of the defendants; and, the repeated rapes and threats of death give concrete substance to Caveny's unrebutted claims of psychological injury. In these circumstances, because the defendants' conduct was extreme for sexual abuse offenses, the district court could conclude that Caveny's psychological harm was also greater than that suffered by most victims of sexual abuse.[17]

The district court was clearly within its discretion in departing from the guidelines on the basis of the defendants' extreme conduct.

### Conclusion

The district court properly considered the sexual abuse of Caveny in sentencing Anderson and Barnett. The court correctly applied the kidnapping guideline and properly enhanced that section's offense level by reference to the guideline for criminal sexual abuse. The four-level upward departure was reasonable, and the district court's justifications for the departure were well-founded by the defendants' conduct and the psychological harm inflicted on their victim.

The convictions and sentences of Anderson and Barnett are

AFFIRMED.

---

[17] In deciding this issue, we measure the psychological harm to Caveny against that suffered by victims of "ordinary" sexual abuse crimes; our standard is not what psychological injury would be considered the normal result of extreme sexual abuse and related conduct such as that exhibited by defendants.