IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-20610
Summary Calendar
_____


UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

v.

DEON TARRAL MCDANIEL,

                              Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
(CR H-95-235-1)
_____
April 16, 1997
Before KING, JOLLY, and DENNIS, Circuit Judges.

PER CURIAM:[*]

     Appellant Deon Tarral McDaniel appeals his guilty-plea

conviction and sentence for bank robbery and carrying a firearm

in connection with the robbery.  Finding no error, we affirm.

                    **I.  BACKGROUND**

     In August 1995, McDaniel, along with his three codefendants

Samora Ahmed-Hafam Edwards, Louis Bernard Davis, and Howard Earl

_____

     [*]Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

Thomas, entered Bank One in Missouri City, Texas, yelling obscenities, making threats, and announcing a hold up. Present during the robbery were bank manager Elva Vasquez, tellers Kim Mullen and Sunita Kalsi, financial sales representative Jill Sheppard, contract maintenance man Gregory Martin, and customers Tamara Curvey and Herman Gillman. When the robbery began, Vasquez activated the silent alarm and got under her desk along with one of the customers. Two of the defendants threw Mullen and Kalsi to the floor and then screamed for someone to open the vault. One of the men asked Kalsi for the key to the vault, grabbing her by the hair and hitting her in the head with his fist as he made the request. When Kalsi informed the robber that the manager had the keys, the robber dragged Curvey by the hair from her hiding place under Vasquez's desk and shoved her to the floor. The defendants threatened to kill someone if keys were not produced. Vasquez told the defendants that she had the keys to the vault. Upon learning this, one of them grabbed Vasquez by the hair and dragged her to the vault. Meanwhile another defendant bound the hands of the tellers and of Martin with duct tape. Martin was hit in the back of the head and neck with a pistol butt. When the defendants discovered that Vasquez did not have the combination to the vault, one of them struck her on the left side of her face, dislocating her jaw, and threatened to kill her. Kalsi was then dragged by the hair to the vault to provide the combination. Kalsi was hit on the head and had the

2

duct tape ripped from her hands.  The robbers were told that the vault could not be opened because of a time delay.  Upon learning this, the defendants again struck Vasquez and Kalsi in the head. The defendants took money from the tellers' drawers and fled as police arrived.

The defendants entered a waiting car and left the bank's parking lot with the police in pursuit.  As they sped away, they fired upon Missouri City police officer J. H. Lemerond.  The chase proceeded to a residential neighborhood where the defendants continued their gunfire.  When two officers established a roadblock, defendants, firing approximately two rounds, drove past the road block, onto a curb, over a mailbox, and down a residential road.

Neighborhood resident Kim Vo was out in her yard and had to run inside to avoid gunfire.  After passing Vo, the car cut between two houses that border a golf corse.  The car slowed; Thomas and Edwards jumped out of the vehicle and into a water hazard where they were apprehended.  McDaniel and Davis continued their flight in the car.  When the car drove past resident Jennifer Marie Burkhalter and her sixteen month old son, one of them opened the door and pointed a gun.

The car stopped after a near-collision with a police car forced it into a nearby yard.  Davis immediately surrendered, but McDaniel continued his flight on foot before he was apprehended. Lab reports showed that Thomas and McDaniel's hands contained

3

trace metals consistent with firing a weapon, handling a fired weapon, or being in immediate proximity to a fired weapon.

All four defendants pleaded guilty. McDaniel received 355 months imprisonment, five years of supervised release on count one (robbery), two concurrent years supervised release on count 2 (use of a firearm during a crime of violence), a fine of $10,000, restitution in the amount of $5403.51, and a special assessment of $100.

McDaniel timely appealed. On appeal, McDaniel argues that the district court erred in increasing his offense level under section 2B3.1 of the Sentencing Guidelines based on serious bodily injury to a victim -- Vasquez -- because Vasquez's injuries were not "serious" and because that section of the Sentencing Guidelines is unconstitutionally vague. McDaniel also argues that the district court failed to follow the requirements of Rule 11 of the Federal Rules of Criminal Procedure when it took his plea. We reject each of these arguments.

## II. DISCUSSION

### A. *The trial court did not clearly err in determining that Vasquez suffered serious bodily injury.*

The Sentencing Guidelines provide for a two level increase if, during a robbery, a victim sustained bodily injury or a four level increase if a victim suffered serious bodily injury. U.S. SENTENCING GUIDELINES MANUAL § 2B3.1(b)(3) (1995) [hereinafter USSG]. McDaniel argues that the district court erred in applying the

4

adjustment because the injuries Vasquez suffered were not serious and so he should thus only be subjected to a two-level increase for bodily injury.

The seriousness of Vasquez's injuries "is a fact inquiry reviewable only for clear error." *United States v. Davis*, 19 F.3d 166, 171 (5th Cir. 1994). "Bodily injury" is defined as "any significant injury; *e.g.*, an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." USSG § 1B1.1 commentary at 1(b). In contrast, "serious bodily injury" is an "injury involving extreme physical pain or the impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." *Id.* at 1(j).

The probation officer described Vasquez's injury in the following manner:

> Following the robbery, Vasquez went to her dentist
> . . . who advised that her jaw had been dislocated.
> She was referred to an oral surgeon [who] . . . .
> verified the dislocated jaw, but indicated that the jaw
> had worked its way back into a normal position and no
> surgery would be required. . . . Vasquez stated that
> she was unable to fully open her mouth or eat "regular"
> food for 90 days. She also experienced severe
> headaches, sleeplessness, nightmares and anxiety for
> approximately 90 days following the robbery.

Vasquez returned to work the next day.

McDaniel concedes that such an injury is a bodily injury but denies that it is a serious one. Although Vasquez did not

5

require hospitalization or rehabilitative service, the use of her jaw was impaired, as described in n.1(j), for ninety days. As the First Circuit recently noted, "[t]o impair, generally, means to diminish or decrease," and there is no requirement of duration. *United States v. Page*, 84 F.3d 38, 43 (1st Cir. 1996). The evidence shows that Vasquez's dislocated jaw prevented normal use of her mouth for ninety days. Based on this evidence, the district court did not clearly err in determining that the dislocation diminished the functioning of her mouth and jaw, therefore meeting the definition of "serious bodily injury."

### B. The Sentencing Guideline is not unconstitutionally vague.

McDaniel argues that the definition of "serious bodily injury" is unconstitutionally vague because it does not provide an objective criteria to aid the fact-finder in determining whether an injury involves extreme pain and, thus, constitutes a serious bodily injury. McDaniel contends that the resulting subjective analysis used by the fact-finder will produce disparate results and, as a result, the definition will not provide an offender fair warning of proscribed conduct.

We find McDaniel's argument meritless because the district court's finding that Vasquez's injuries were serious can be supported under the bodily function impairment prong without reference to the extreme pain prong of the serious bodily injury

definition.  Thus, McDaniel's vagueness contention has no bearing on this case.

**C.     The district court did not commit any harmful error under Rule 11 in taking McDaniel's plea.**

McDaniel pleaded guilty, and at his plea hearing, the court advised him of the applicable sentencing guidelines for count 2 in the following manner:

> The Court: Count 2, violation of Title 18, United States Code, Section 924(c)(1), which is use of a firearm during and in relation to a crime of violence.  The penalty range is a consecutive sentence of five years.  *And if the firearm used is a short barreled rifle, short barreled shotgun or a semi-automatic assault weapon, a consecutive sentence of 10 years.*  Sentencing Guidelines will apply to that Count also.  There is a supervised release period not to exceed three years. And on each Count, Count 1 and Count 2, there's a $50 Special Assessment for a total of $100.
>
> Now, "consecutive sentence," for those of you who may be familiar or not familiar with the term, means a stacked sentence. That's a different slang term that we use in the legal system.  Make sure you understand. That sentence is going to be stacked on top of the one I give you in Count 1.  That's what "consecutive" means.  *You serve the term on Count 1, whatever term you end up getting, and then you have to serve five years on Count 2.*

(emphasis added).  McDaniel argues that the trial court erred in the last statement by telling him that he would be subject to a five year minimum penalty on count 2 when he was really subject to a ten year minimum penalty.  McDaniel claims this violates

7

Rule 11, which requires the trial court to inform the defendant of the mandatory minimum and maximum penalties before accepting a guilty plea.

It is unclear if the trial court actually committed an error in the plea colloquy because the court initially told McDaniel the correct penalty range. While the court later may have made a misstatement, it was in the context of defining what "consecutive" means, not in informing McDaniel of the penalty range.

Assuming arguendo that the trial court did err, we conclude that the error is not reversible because McDaniel was not harmed. The circumstances indicate that McDaniel knew the correct penalty to which he was subject. The probation officer recommended ten years for count 2, and not once did McDaniel complain that he had misunderstood the potential penalty or seek to withdraw his guilty plea. McDaniel never even argues that if he had received the correct information, it would have impacted his decision to plead guilty. A Rule 11 error is not harmful unless "the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty." *United States v. Johnson*, 1 F.3d 296, 302 (5th Cir. 1993)(en banc). Thus, any Rule 11 error the trial court may have committed is harmless.

### III.  CONCLUSION

For the forgoing reasons, we AFFIRM McDaniel's guilty-plea conviction and sentence.